UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JOSEPH EBU, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:23-00003-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES CITIZENSHIP AND | ) | **OPINION** |
| IMMIGRATION SERVICES and | ) | **&** |
| MICHAEL ZERVAS, USCIS LOUISVILLE | ) | **ORDER** |
| FIELD OFFICE DIRECTOR, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Throughout our nation's history, foreign-born men and woman have come to the United States with hopes of becoming naturalized American citizens. Among our nation's virtues, perhaps none is greater than affording persons born elsewhere the opportunity to join in the American experience.

Joseph Ebu is someone seeking to join our American experience. He has filed an Application for Naturalization, appeared for an interview with United States Citizenship and Immigration Services, and passed the requisite tests in English and civics. Yet, after nearly two years, Mr. Ebu's application has neither been approved nor denied. Because of two past misdemeanor convictions, Mr. Ebu is currently involved in proceedings that may result in his deportation. Under federal law, the Executive Branch—conferred the sole authority to naturalize persons as citizens of the United States—is proscribed from considering Mr. Ebu's application while these removal proceedings are pending. But while the Executive Branch is barred from considering Mr. Ebu's application, he believes that the Judicial Branch can. So, can it?

Admittedly, this question appears to be an open one in this Circuit. Other courts have pondered the question and reached opposite conclusions from one another. Despite the unpaved roads, this Court believes that a well-reasoned roadmap has been drawn and warrants following. Ultimately, that roadmap leads to the conclusion that the answer is no, this Court may not adjudicate Mr. Ebu's application while removal proceedings are pending against him. Thus, for the reasons explained below, United States Citizenship and Immigration Services' motion to dismiss will be **GRANTED**.

I

Plaintiff Joseph Ebu is a Lawful Permanent Resident of the United States residing in Lexington, Kentucky. [R. 1 at ¶ 1.] In June 2022, Mr. Ebu filed an Application for Naturalization with the United States Citizenship and Immigration Services ("USCIS"). *Id*. at ¶ 2. On July 18, 2022, Mr. Ebu appeared for his Naturalization Interview at USCIS's Louisville Field Office. *Id*. at ¶ 5. Despite Mr. Ebu's passage of the required examinations in English and United States history, more than 120 days have passed since Mr. Ebu's interview and USCIS has not issued a decision concerning his application. *Id*. at ¶¶ 5, 7. Mr. Ebu is currently involved, however, in ongoing removal proceedings due to two misdemeanor convictions. *Id*. at ¶ 8. He is allegedly subject to deportation from the United States because his misdemeanors constituted "crimes involving moral turpitude." *Id*. According to Mr. Ebu, his misdemeanor convictions do not bar him from showing good moral character as necessary for naturalization eligibility because the offenses occurred more than five years ago. *Id*. at ¶ 9.

Hence, Mr. Ebu turns to this Court seeking relief. First, Mr. Ebu asks this Court to adjudicate his naturalization application de novo pursuant to 8 U.S.C. § 1447(b). *Id*. at 6. In the alternative, Mr. Ebu asks for a grant of declaratory relief finding that he is prima facie eligible

for naturalization. *Id*. The defendants have moved pursuant to Rule 12(b)(6) to dismiss Mr. Ebu's claim. [R. 16.] The Court turns now to the pending motion.

## II

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of cause of action will not do." *Id.*

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).

### A

The Court first considers Mr. Ebu's request for de novo adjudication of his naturalization application. USCIS elucidates in its motion that Mr. Ebu fails to state a plausible claim for relief

under 8 U.S.C. § 1447(b) because this Court is barred from adjudicating Mr. Ebu's naturalization application while his removal proceedings are pending. [R. 16 at 6.] Prior to the Immigration Act of 1990, the authority to naturalize an alien was vested in the district courts, and removal was entirely the province of the Attorney General. *Rahman v. Napolitano*, 385 F. App'x 540, 542 (6th Cir. 2010) (citing *Zayed v. United States*, 368 F.3d 902, 905 (6th Cir. 2004)). Through the Immigration Act of 1990, however, Congress unified naturalization authority and removal authority in the Attorney General of the United States. *Id*. at 542-43. Thus, as the law stands today, "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a). If the Attorney General does not make a decision on a naturalization application within 120 days of the initial examination, however, the applicant seeking United States citizenship may file a petition in federal court seeking review of the application. 8 U.S.C. § 1447(b).

The Immigration Act of 1990 provides that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding . . . ." 8 U.S.C. § 1429. Accordingly, the question that arises in this case is whether a district court may consider a petition under § 1447(b) when the Attorney General is precluded from considering the application because there are removal proceedings pending against the petitioner-applicant. USCIS avers that, based on a natural reading of the statute and persuasive authority, the answer is a resounding no. Ultimately, the Court agrees.

The Sixth Circuit previously considered this very issue and concluded "as other courts have, that § 1429 . . . limits the scope of the district court's review and circumscribes the available remedies in an action brought under § 1447(b) when removal proceedings are pending against the applicant." *Rahman*, 385 F. App'x at 543 (citing *Ajlani v. Chertoff*, 545 F.3d 229,

4

238-39 (2d Cir. 2008); *Saba-Bakare v. Chertoff*, 507 F.3d 337, 341 (5th Cir. 2007)). As the *Rahman* court evinces, § 1429 is a priority provision. Since 1950, when § 1429 was originally adopted, the Congressionally mandated status quo has been that deportation proceedings get resolved before naturalization proceedings may proceed. *See id.* at 542 ("Congress put an end to the race between naturalization and removal in 1950 by adopting a priority provision declaring, in part, that no petition for naturalization shall be finally heard by a naturalization court while deportation proceedings were pending against the applicant") (citations and internal quotations omitted); *see also Zayed*, 368 F.3d at 905 ("The history of the Immigration Act of [1990] does suggest that Congress intended removal proceedings to have priority over naturalization proceedings"). The Court agrees with *Rahman*'s sound reasoning that "[t]here is no basis to conclude that Congress intended to alter the long-standing priority that removal proceedings are to have over naturalization proceedings." *Rahman*, 385 F. App'x at 544. Were this Court to undertake an evaluation of Mr. Ebu's application pursuant to § 1447(b), it would risk opening a floodgate to similarly situated applicants who might seek the judiciary as a more favorable forum to decide their naturalization application when the Attorney General is precluded from doing so. This result certainly frustrates the framework established by Congress, which confers a preference not only to removal proceedings being adjudicated first, but also that the Attorney General have the sole authority to naturalize persons as citizens of our nation.

     Mr. Ebu argues that this Court should disregard *Rahman* because it is an unpublished decision, and that the reasoning of other Circuits is more instructive. *Cf. Yith v. Nielsen*, 881 F.3d 1155, 1165 (9th Cir. 2018) (holding that because "§ 1429 applies only to the Attorney General, not the district court, the district court erred in concluding that the reference to the Attorney General in § 1429 prevented it from granting relief under § 1447(b)"); [R. 17 at 6-8.]

5

According to Mr. Ebu, arguing the Ninth Circuit's conclusion, § 1429 imposes limits only on USCIS, not the Courts. *Id*. at 3-6. Despite Mr. Ebu's sentiments, the Court finds no compelling reason to diverge from the Sixth Circuit's well-articulated disposition. Indeed, other district courts within the Sixth Circuit have also acknowledged *Rahman*'s persuasiveness. *See e.g.*, *Baysal v. Holder*, Case No. 1:10-cv-696-HJW, 2011 U.S. Dist. LEXIS 97136, at *7-10 (S.D. Ohio Aug. 30, 2011). Likewise, for the reasons explained above, this Court will adhere to *Rahman*. Thus, because removal proceedings are currently pending against Mr. Ebu, this Court is precluded from affording him relief.

**B**

Alternative to his request for relief pursuant to § 1447(b), Mr. Ebu asks this Court to grant him declaratory relief that he is prima facie eligible for naturalization. [R. 1 at 5-6.] Mr. Ebu evinces in his Complaint that agency case law permits prima facie eligibility to be established by a "declaration of the court." *Id*. at ¶ 27 (quoting *In re Cruz*, 15 I. & N. Dec. 236, 237, 1975 WL 31486 (BIA 1975)). USCIS argues that Mr. Ebu's second claim must too be dismissed because: (1) *Cruz* predates the Immigration Act of 1990; (2) § 1447(b) does not provide for declaratory judgments of prima facie eligibility; and (3) in this context a declaratory judgment would amount to an impermissible advisory opinion. [R. 16 at 10.] Once again, the Court agrees with USCIS—a district court lacks authority to issue declaratory judgments regarding prima facie eligibility.

First, Mr. Ebu's reliance on *Cruz* is indeed misplaced. *Cruz*, a decision by the Board of Immigration Appeals, was decided prior to Congress' conferral of sole naturalization authority to the Attorney General. Whereas before the Immigration Act of 1990 a district court could make a declaration establishing an alien's prima facie eligibility for naturalization, it appears that *Cruz*

"does not accurately reflect the current state of naturalization law." *Acosta Hidalgo*, 24 I&N Dec. 103, 105 (BIA 2007); *see also Levy v. INS*. 6 F. App'x 331, 332-33 (7th Cir. 2001) ("[*Cruz*] was decided at a time when district courts had exclusive jurisdiction to grant or deny applications for naturalization").  USCIS points to Sixth Circuit precedent strongly suggesting that only the Department of Homeland Security, via the power conferred to it by the Attorney General, has "the authority to issue an opinion concerning an alien's prima facie . . . eligibility for naturalization once removal proceedings have begun."  *See Shewchun v. Holder*, 658 F.3d 557, 564-65 (6th Cir. 2011).

Mr. Ebu challenges this premise by arguing that the Board of Immigration Appeals has never stated that it would refuse to honor a declaratory judgment issued by a federal court.  [R. 17 at 8.]  Mr. Ebu is correct—other adjudicatory bodies typically honor a court's declaratory judgment—but his argument completely misses USCIS' point.  The rub is not whether this Court's declaratory judgment would be obeyed, but rather whether this Court even has the authority to issue a declaration of prima facie eligibility post-1990.  As explained above, *Cruz* no longer retains precedential value that would convince this Court of its authority to issue declaratory judgment on the matter.

And neither does § 1447(b) bestow authority.[1]  § 1447(b) permits a district court to "determine the matter [of whether an applicant should be approved or denied]" or remand to USCIS.  8 U.S.C. § 1447(b).  Mr. Ebu avers that these powers allow the Court to grant declaratory relief.[2]  [R. 17 at 9.]  But as explained in section (A) of the Court's analysis above,

---

[1] Mr. Ebu argues that declaratory judgment would still be proper because this Court would have jurisdiction pursuant to 28 U.S.C. § 1331.  [R. 17 at 10.]  As USCIS explains, however, § 1331 is "subject . . . to preclusion of review statutes created or retained by Congress."  [R. 18 at 12 (quoting *Califano v. Sanders*. 430 U.S. 99, 105 (1977)).]
[2] Mr. Ebu also avers that a federal court's power to "issue all writs necessary or appropriate in aid of their respective jurisdictions" permits this Court to grant declaratory relief and issue appropriate instructions to USCIS on remand.

7

the Court may not usurp the powers of the Attorney General and provide relief while removal proceedings are pending. *See* 8 U.S.C. § 1429. This proscription naturally extends to any power the Court might have to issue declaratory judgments.

Finally, the Court also agrees that a declaratory judgment on Mr. Ebu's prima facie eligibility for naturalization would be an advisory opinion. Even if this Court determined that Mr. Ebu was eligible for naturalization, Mr. Ebu would still face the possibility of deportation from the United States because his removal proceeding is still pending. Thus, a declaratory judgment would not provide Mr. Ebu with the relief that he ultimately seeks, which is the resolution of his naturalization application.

### III

Because this Court cannot provide Mr. Ebu with either form of relief he is seeking, his claims must fail as a matter of law. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants Michael Zervas's and U.S. Citizenship and Immigration Services' Motion to Dismiss [**R. 16**] is **GRANTED**; and
2. Plaintiff Joseph Ebu's Complaint [**R. 1**] is **DISMISSED**.

This the 29th day of March 2024.



Gregory F. Van Tatenhove
United States District Judge

---

[R. 17 at 9 (citing 28 U.S.C. § 1651).] For all of the reasons explained above, however, the Court finds this argument by Mr. Ebu unpersuasive.